**Annie Jo BURNEY and Archie Burney,
Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21348.**

United States Court of Appeals
Fifth Circuit.

Dec. 3, 1964.

George Kluttz, Miami, Fla., for appellants.

Edward A. Kaufman, Asst. U. S. Atty., Miami, Fla., William A. Meadows, Jr., U. S. Atty. Southern District of Florida, for appellee.

Before JONES and GEWIN, Circuit Judges, and ESTES, District Judge.

GEWIN, Circuit Judge.

The appellants (defendants) were tried by a jury, found guilty and convicted in the United States District Court for the Southern District of Florida of unlawful possession, concealment and sale of non-tax-paid distilled spirits

in violation of §§ 5205(a) (2) and 7206 (4) of Title 26 U.S.C.A.[1]

As frequently happens in cases of this nature, the testimony is in sharp conflict. The Government witnesses testified that by a preconceived plan and while acting as undercover agents, they went to the residence of the defendants on September 12, 1963, and arranged for Archie Burney to deliver ten gallons of whiskey to their premises later that day. According to their testimony, both defendants were in the house during these negotiations, but Annie Jo was in another room. Soon after the agents arrived, Annie Jo went into the kitchen and returned with two glasses of moonshine whiskey which she handed to the two agents with the comment that she gave all of her customers a glass of whiskey when they came. Later that evening both defendants arrived at the government agents' house. The agents testified that Archie delivered two five gallon containers to them while Annie Jo said something about watching for the police, reminded her husband about the price, and then left the immediate area and stood out by the street. There was also evidence to the effect that Annie Jo said before she left the car to go to the street to watch for the police, "You know it is seventy dollars now?" After the transaction was completed, both defendants left the scene without any arrest then being made. The defendants' version of the foregoing facts is quite radically different. Annie Jo testified that on the day in question she had been with another man, one Willie Fisher, in his room from 1 P.M. until after 9 P.M. that evening. Fisher testified to substantially the same facts. Archie denied the acts charged and stated that he was "bar hopping" during the period in question. Both defendants denied that they had ever seen the Government agents prior to the trial.

The Government agents testified that they tasted and smelled the contents of the containers and that the contents were distilled whiskey, commonly called moonshine. The containers and contents were destroyed soon after the events mentioned. There is no indication of any fraud or evil purpose connected with the destruction. The agents who testified as to the contents of the jug containers were shown to be qualified so to testify by long experience and dealings with distilled spirits or moonshine. Objection was made to the testimony of the agents concerning the nature and composition of the contents of said containers.

1. § 5205(a) (2):

"(2) Containers of other distilled spirits.—No person shall transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof is stamped by a stamp evidencing the determination of the tax or indicating compliance with the provisions of this chapter. The provisions of this paragraph shall not apply to—

"(A) distilled spirits, lawfully withdrawn from bond, placed in containers for immediate consumption on the premises or for preparation for such consumption;

"(B) distilled spirits in bond or in customs custody;

"(C) distilled spirits, lawfully withdrawn from bond, in immediate containers stamped under other provisions of internal revenue or customs law or regulations issued pursuant thereto;

"(D) distilled spirits, lawfully withdrawn from bond, in actual process of rectification, blending, or bottling, or in actual use in processes of manufacture;

"(E) distilled spirits on which no internal revenue tax is required to be paid;

"(F) distilled spirits lawfully withdrawn from bond and not intended for sale or for use in the manufacture or production of any article intended for sale; or

"(G) any regularly established common carrier receiving, transporting, delivering, or holding for transportation or delivery distilled spirits in the ordinary course of its business as a common carrier."

§ 7206(4):

"(4) Removal of concealment with intent to defraud.—Removes, deposits, or conceals, or is concerned in removing, depositing, or concealing, any goods or commodities for or in respect whereof any tax is or shall be imposed, or any property upon which levy is authorized by section 6331, with intent to evade or defeat the assessment or collection of any tax imposed by this title;"

The District Court allowed the jury to determine as a question of fact the contents of said containers upon such oral testimony alone.

The appellants now place before us for judicial determination two issues, viz.: (1) did the District Court commit error in admitting into evidence oral testimony by government witnesses describing the contents of the containers in question as distilled spirits [2] and submitting the issue of identification of the contents of the containers to the jury without physically producing them in court; and (2) was there sufficient evidence adduced at the trial to show "possession" of distilled spirits by the appellant Annie Jo Burney?

With respect to their first specification of error, appellants urge us to consider the case of Watson v. United States, 224 F.2d 910 (5 Cir. 1955). It is asserted that the Watson case compels us to find error in the ruling of the trial court which admitted oral testimony concerning the contents of the jugs or containers, as constituting a violation of the best evidence rule. In Watson, the court reversed a conviction and remanded for a new trial stating that the introduction of oral testimony as to the contents of certain containers was, over objection, a departure from the best evidence rule, and could not be regarded as harmless error. The court pointed out however, that the use of secondary evidence could be justified on another trial if the Government could show by competent evidence that it had destroyed the primary evidence in its possession without any

*fraudulent* purpose or intent to create an excuse for its non-production. id, p. 912.

Later, in Atkins v. United States, 240 F.2d 849 (5 Cir. 1957), this court affirmed the conviction of a defendant for unlawful possession of distilled spirits in a container which did not have revenue stamps affixed thereto. The question of the best evidence rule was mentioned by the court, but no reversible error was found because, the court observed, inter alia, that no timely objection was made by the defendant. Notwithstanding Watson, the court concluded: "It is the well settled rule that objections to evidence should be timely made when the evidence is offered, * * *." citing Metcalf v. United States, 195 F.2d 213, 216 (6 Cir. 1952). The appellants remind us that Atkins is easily distinguishable from the present case because here a timely objection was made. Therefore, say appellants, according to the language of the court in Atkins,[3] we must apply the best evidence rule as was done in Watson and reverse.

The Watson decision is a minority decision on this point. As far as we are able to ascertain, the Watson case is the only case in all of the Circuits which does not confine the scope of the best evidence rule to the production of original documents or writings whenever feasible. Following our decision in Watson, this court has had occasion to consider the contention now urged upon us by the appellants. Dicks v. United States, 253 F.2d 713 (5 Cir. 1958);[4]

---

2. Section 5002(a) (6) (A) defines "Distilled Spirits" as follows:

   "(A) General Definition.—The terms 'distilled spirits', 'alcoholic spirits', and 'spirits' mean that substance known as ethyl alcohol, ethanol, or spirits of wine, including all dilutions and mixtures thereof, from whatever source or by whatever process produced, and shall include whisky, brandy, rum, gin, and vodka."
   See Jordan v. Roche (1913) 228 U.S. 436, 33 S.Ct. 573, 57 L.Ed. 908.

3. The court made the following statements in Atkins, 240 F.2d p. 852:
   "(4) If the objection and insistence had been timely made, it may be that the

two Government witnesses should not have been permitted to testify as to the contents of the wooden barrel without requiring some of such contents to be produced or *proof of a proper excuse for its nonproduction*." Citing Watson. (emphasis added)

4. In Dicks, the court refused to apply the rule in the Watson case and concluded as follows:
   "Conceding that in the generality of its statement the opinion in the Watson case is subject to the construction that it was intended to apply the best evidence rule to an attempt, without accounting for their non-production, to prove that there

**94**

West v. United States, 259 F.2d 868, 869 (5 Cir. 1958); and Palmquist v. United States, 283 F.2d 758 (5 Cir. 1960). All three cases dealt with admissibility of evidence in illicit liquor cases. In Dicks we declined to apply the rule announced in Watson. In Palmquist it was unnecessary to decide the question, but we took note of the decision in the Dicks case and cited the case of Meyers v. United States (1948), 84 U.S.App.D.C. 101, 171 F.2d 800, 11 A.L.R.2d 1, which is considered a leading case on the subject. The West case is very similar to the instant case because there the confiscated liquor was destroyed except for one jar which was taken to the laboratory for analysis, and the officer's testimony as to the destroyed contents of the containers was admitted over the objection that it was not the best evidence. The decision in the Dicks case was cited with approval. The Watson decision was not mentioned in our later decisions in Palmquist and West. In Meyers, the court noted that:

> "As applied generally in federal courts, the [best evidence] rule is limited to cases where the contents of a writing are to be proved." [5]

The admissibility of evidence in criminal cases is governed by Rule 26 of the Federal Rules of Criminal Procedure. That rule provides that the common law, as it may be interpreted by the courts of the United States in the light of reason and experience, shall control except where Congress or any of the other criminal rules provides otherwise. The Federal Rules of Criminal Procedure do not contain a code of evidence. The Rules fix no standards with respect to best, secondary and demonstrative evidence. Rule 26 [6] is very short and clear, but it is also very broad, sweeping and flexible. Rule 26 contemplates no overall conformity with state rules of evidence. Federal substantive law governs, and we have no occasion to look to the state law. Therefore, it is of paramount importance that we strive to apply whenever and wherever possible, uniform rules of law and evidence in federal criminal cases. We conclude that the challenged testimony of the Government agents was admissible.

Proceeding now to the appellants' second specification of error, we must determine whether there was sufficient evidence to show possession of distilled spir-

were no revenue stamps on the containers and that their contents were liquors or distilled spirits, we are not disposed to apply it here."

In its footnote 3 the court cited McCormick on Evidence, § 195, p. 409, where the rule is stated as follows:

"While some modern opinions still refer to the 'best evidence' notion as if it were today a general governing legal principle, most would adopt the view of modern textwriters that there is no such general rule. The only actual rule that the 'best evidence' phrase denotes today is the rule requiring the production of the original writing. Cf. 20 Am.Jur., 'Evidence,' Sec. 438; 4 Wigmore, 3rd ed., Sec. 1178; 22 C.J.S. Criminal Law § 692; Meyers v. United States, 84 U.S.App.D.C. 101, 171 F.2d 800, at page 813, 11 A.L.R.2d 1."

To the same effect is Wharton's Criminal Evidence (12th Ed. Anderson) Vol. 2, § 591, p. 476:

"* * * Although frequently stated in more general terms, the best evidence rule is applicable only to the proof of the contents of documents or recordings. It is therefore not necessary that a tangible thing be produced in court; a parol description of the thing is admissible."

5. See also, United States v. Alexander, 326 F.2d 736 (4 Cir. 1964); Chandler v. United States, 318 F.2d 356 (10 Cir. 1963); Francis v. United States, 239 F.2d 560 (10 Cir. 1956); and United States v. Waldin, 253 F.2d 551, 554 (3 Cir. 1958).

6. Rule 26, F.R.Cri.P. provides:

"In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an act of Congress or by these rules. The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

its by Annie Jo Burney. It is contended that the evidence adduced at the trial was totally insufficient to prove that she ever had possession of any illicit whiskey. In support of this contention, appellants cite McClain v. United States, 224 F.2d 522 (5 Cir. 1955); Handford v. United States, 249 F.2d 295 (5 Cir. 1957); and Newsom v. United States, 335 F.2d 237 (5 Cir. 1964). As has already been stated, the testimony of the parties is diametrically opposed. If the jury chose to believe the testimony of the government witnesses in lieu of that of appellants, then it would appear that the following events transpired during the commission of the illegal activities alleged: (1) Annie Jo Burney served moonshine whiskey to the undercover agents before the trip to deliver the two jugs of whiskey, and she referred to them as her customers; (2) Annie Jo accompanied her husband, Archie Burney, in their automobile to the residence of the government agents to make the delivery; (3) the automobile in which both appellants were riding did then contain illicit distilled spirits; (4) the automobile, driven by Archie Burney, who was accompanied by his wife, Annie Jo, was then backed into the driveway of the government agent's residence; (5) Annie Jo was in the automobile when it was stopped close to the agent's house; (6) she was asked for a match and after offering it stated: "Let me get out [of the automobile] and see where the police is at."; (7) prior to getting out of the automobile, she also asked: "You know it is seventy dollars now?"; and further stated to her husband Archie: "Now, its seventy dollars."; (8) she then got out of the automobile and went to the mouth of the driveway and acted as lookout; (9) the seventy dollars was paid and the two containers of whiskey were exchanged; and (10) she then got back into the car with Archie and they subsequently left the premises.

It is our conclusion that the foregoing facts, as testified to by the government witnesses and as apparently believed by the jury, would amply support a finding of possession of the illicit whiskey by appellant Annie Jo Burney. The foregoing activities of Annie Jo Burney place her in an active role in this illegal transaction and indicate sufficient dominion, control, and interest in the whiskey to support adequately the jury's verdict. After close scrutiny, we have little difficulty in distinguishing McClain, Handford, and Newsom from the instant case. Here we have far more than "mere knowledge" of the commission of a crime, or mere presence at the scene.

As was stated in Riggs v. United States, 280 F.2d 949 (5 Cir. 1960), our function is to find whether, taking the view most favorable to the Government, there is substantial evidence to support a verdict of guilty.[7] It is our opinion that the evidence presented in this case is sufficient, within the rule of Riggs v. United States, supra, to support a verdict of guilt as to both appellants.

The judgment is affirmed.

---

7. Glasser v. United States, 315 U.S. 60, 80 S.Ct. 457, 86 L.Ed. 680 (1942); Lloyd v. United States, 226 F.2d 9, 13 (5 Cir. 1955); Badon v. United States, 269 F. 2d 75, 79 (5 Cir. 1959).